**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LAIRAI KARNIK<br>511 Stevens Drive, Apartment D<br>King of Prussia, PA 19406 | : | CIVIL ACTION – LAW<br>NO. |
| Plaintiff, | : | *Electronically filed* |
| vs. | : | |
| GLOBUS MEDICAL, INC.<br>2560 General Armistead Avenue<br>West Norriton, PA 19403 | : | JURY TRIAL OF 12 DEMANDED |
| Defendant. | : | |

## **COMPLAINT**

### **JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 as the action arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq*., as well as the Americans with Disabilities Act Amendments Act ("ADAAA"). Plaintiff's Title VII Notice of Right to Sue letter was issued June 30, 2026. Plaintiff cross-filed this matter under the Pennsylvania Human Relations Act, 43 Pa.C.S. §951, *et seq*., with the Pennsylvania Human Relations Commission. Plaintiff seeks the Court to deem this action filed once one year has passed. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367 because they are so related to the federal claims that they form part of the same case.

2. Venue is proper in the Eastern District of Pennsylvania because Defendant is located in this District, Plaintiff worked for Defendant in this District and Plaintiff resided in this District at the time of the illegal activity herein.

## FACTUAL ALLEGATIONS

3. Plaintiff is Lairai Karnik (hereinafter "Plaintiff"), a resident of Montgomery County residing at 511 Stevens Drive, King of Prussia, PA 19406.

4. Defendant is Globus Medical, Inc. (hereinafter "Defendant"), a foreign business corporation formed in Delaware, with a principal address of 2560 General Armistead Avenue, West Norriton, PA 19403, and a registered office located at Corporation Service Company, 5235 North Front Street, Harrisburg, PA 17110, Dauphin County. Plaintiff worked for Defendant at its 2560 General Armistead Avenue, West Norriton, PA location.

5. Plaintiff was hired by Defendant on February 19, 2024 as a Product Manager.

6. Plaintiff's job duties included leading development efforts focused on user interface and user experience of the product, handling surgeon design team sessions and related communication, forecasting and market analysis, product documentation, and other similar tasks.

7. Plaintiff was retaliated against and terminated on July 28, 2025 by Defendant because of her ADA protected disability, because she asked for an ADA

accommodation, and while Plaintiff was on restrictions for a worker's compensation injury.

8. Plaintiff initially sustained a non-work-related injury, tendinitis to her right shoulder, in June of 2024.

9. In July 2024, despite Plaintiff verbally informing Plaintiff's manager, Hayden Cameron, of her shoulder injury, Mr. Cameron tasked Plaintiff with operating the C-arm (a massive fluoroscopy machine) which aggravated the injury.

10. In August 2024, Plaintiff saw Dr. Alexis Williams who diagnosed rotator cuff and bicep tendinitis and prescribed physical therapy, as well as work restrictions.

11. Plaintiff informed Manager Cameron of her physician's restrictions, and as a result Manager Cameron initially informally accommodated Plaintiff by asking other employees to help her move workplace items that she needed to move.

12. Plaintiff completed her physical therapy in November 2024.

13. From October 2024 to May 2025, Manager Cameron assigned Plaintiff physical tasks, including during the time that she was still completing her physical therapy for her shoulder injury and despite the fact that she had informed him that she had not recovered full strength of her shoulder.

14. Plaintiff made her manager, Hayden Cameron, and Defendant aware of her injury and limitations on more than one occasion.

15. Manager Hayden Cameron repeatedly assigned strenuous, repetitive physical tasks to Plaintiff, ultimately resulting in reinjury and exacerbation of her pre-existing injury of her right shoulder on May 20, 2025.

16. Prior to and following the May 20, 2025 work injury, Plaintiff was instructed by her manager to perform several other repetitive physical manual tasks, which exacerbated and prolonged her injury, causing weakness and pain.

17. On May 20, 2025, Plaintiff was instructed by Manager Cameron to set up an EFlex-TKA system by herself, even though during a 1:1 previously with Manager Cameron, Plaintiff had informed him that she needed assistance due to her shoulder injury.

18. Plaintiff verbally reported her work injury, reinjury to the shoulder, the same day to Manager Hayden Cameron.

19. Manager Cameron ignored Plaintiff's injury, fixating on the assembly, and stated that he would 'take care of it'.

20. Plaintiff, as instructed, continued to set up the EFlex-TKA system by herself, which exacerbated her pre-existing shoulder injury. However, due to the pain of the re-injury, Plaintiff was unable to fully complete the task of the setup.

21. At all times, Plaintiff asserts her labral shoulder condition was a substantial limitation of a major life activity. However, due to her reinjury and aggravation of symptoms, she became even more limited in her ability to do physical tasks, particularly fine manipulation.

22. Accordingly, due to Manager Cameron's refusal to accommodate Plaintiff, Plaintiff was reinjured at work on May 20, 2025.

23. This reinjury and exacerbation of her right shoulder resulted in a labral tear, leaving Plaintiff with restrictions on her ability to lift and use her arm, and is a disability as defined by the ADA.

24. As a result of this re-injury, Plaintiff received physical therapy and medication to ease her pain through Concentra-King of Prussia as well as Integrated Physical Therapy (Exton and Bryn Mawr).

25. During a 1:1 on May 22, 2025, Manager Cameron asked Plaintiff why the EFlex-TKA was not fully set up on May 20th, despite being aware that Plaintiff had previously asked for accommodation for her non-work injury as well as reported the work injury to him on May 20th.

26. During this 1:1, Plaintiff again reminded Manager Cameron of her injury and reinjury and her need for accommodation.

27. Manager Cameron was dismissive and said, "…. I need you to be able to set up the system from scratch, completely unassisted as the PM" and urged

Plaintiff to practice drilling the sawbones.

28. On June 5, 2025, Plaintiff was called into a meeting with Human Resource Representative Amy Garrett and Manager Hayden Cameron and placed on a Performance Improvement Plan ("PIP").

29. Many of the goals on the PIP involved Plaintiff performing physical tasks "unassisted/autonomously", which concerned Plaintiff.

30. Plaintiff reminded Manager Cameron and Human Resource Representative Garrett during the meeting of her injury and her restrictions.

31. HR Representative Garrett stated, "it sounds like you might need accommodations...I think overall knowledge should be more important than the actual physical tasks themselves."

32. Mr. Cameron then stated, "Injuries and all I understand, you can figure out whatever with her [HR Representative Garrett] separately, but ultimately this *is* a physical job. You need to be lifting and pushing and carrying things."

33. Plaintiff avers that Manager Cameron's statement was not true and Plaintiff's job was not described this way to her at the time of hire.

34. Plaintiff formally reported her May 20, 2025 work injury to Defendant's Human Resources on June 6, 2025, including the name of her physician and a list of restrictions: difficulty moving, lifting, operating medical equipment.

35. This was a formal request for accommodation under the ADA.

36. In the work injury Incident Report, Plaintiff specifically described how the work injury occurred, as well as identified any factors that contributed to or caused the injury.

37. In the work injury Incident Report, Plaintiff additionally identified dates when she had been assigned various physical tasks leading up to the May 20th injury as well as following this date.

38. Plaintiff was told by Human Resources that since her manager, Hayden Cameron, was on vacation from June 9-13th that she would have to wait until his return for Defendant to formalize Plaintiff's accommodation request.

39. Defendant delayed formalizing Plaintiff's accommodations.

40. In approximately June 2025, when Plaintiff was plugging a cord into an electric socket, Manager Cameron sarcastically commented, "Hope this does not push the limits of your physicality."

41. During this same timeframe, after Manager Cameron was aware that Plaintiff had formally requested an accommodation, he made other sarcastic comments to Plaintiff.

42. Once Plaintiff initially asked for accommodations, Plaintiff was consistently met with indifference, lack of support, comments about her injury and accommodation, and retaliatory and hostile behavior from her manager, Hayden

Cameron, as well as Mr. Cameron's boss, who was based in Switzerland. Plaintiff communicated with Mr. Cameron's boss via TEAMS and email.

43. Plaintiff met with Human Resources on June 19, 2025 to discuss Manager Cameron's retaliatory behavior towards her and also to formalize Plaintiff's accommodation.

44. Plaintiff was informed later that day during her 1:1 with Manager Cameron that her accommodations were granted and she was being placed on modified duty.

45. Manager Cameron then asked Plaintiff if she was able to "lift her laptop".

46. On June 30, 2025, Plaintiff was put on another PIP with goals that were not physical in nature.

47. Plaintiff was assigned a user manual and set list supplement for EFlex-THA task as part of this PIP with a 3-week deadline for the user manual.

48. The user manual task assignment was puzzling to Plaintiff as this was a Q4 task and markedly premature.

49. The project was in a developmental stage with many things in flux and a lot of unknowns.

50. In Plaintiff's view, she was assigned this task to set her up for failure.

51. Fellow colleagues expressed confusion as to why Manager Cameron had assigned Plaintiff to draft the user manual at that stage since the engineers were still building and testing.

52. Manager Cameron provided misleading and inconsistent expectations as well as contradictory instructions, including going back and forth as to whether Plaintiff could or could not speak with the engineers to confirm instrument assembly.

53. Plaintiff informed HR Representative Amy Garrett of Manager Cameron's inconsistency and contradictions in an email dated July 14, 2025.

54. Despite agreeing to a section-by-section review to provide input/feedback to Plaintiff, Manager Cameron instead was evasive, refused to provide clarification on items, and hindered Plaintiff's work production at times.

55. Plaintiff continuously provided via email sections to Manager Cameron for his review and input/feedback.

56. Plaintiff's manager did not provide a single change request or any feedback prior to July 21, 2025.

57. On or about July 17, 2025, Plaintiff emailed and on July 21, 2025 spoke with Human Resource Representative Amy Garrett regarding a pattern of retaliatory and hostile behavior.

58. Plaintiff expressed fear verbally to Human Resource Representative Amy Garrett that Manager Cameron would retaliate again and continue the hostile work environment, so Plaintiff requested a transfer in writing via email to HR Representative Garrett.

59. On several occasions, including on July 21, 2025, when Plaintiff informed Human Resource Representative Garrett of Manager Cameron's retaliatory behavior and comments, HR Representative Garrett told Plaintiff that she had addressed this with Manager Cameron and not to worry. However, Manager Cameron continued to retaliate against and show hostility toward Plaintiff.

60. According to Defendant's EEOC Position Statement, Manager Cameron recommended terminating Plaintiff on July 17, 2025, prior to the User Manual deadline. Despite this, Manager Cameron continued assigning revisions and additional work the following week.

61. Although Manager Cameron had agreed to an iterative review process, feedback was withheld until the final stage, leaving little opportunity to incorporate meaningful changes prior to the deadline. At the same time, the recommendation for termination had already been made prior to the deadlines and submission of the assigned PIP tasks.

62. Additionally as part of Plaintiff's PIP on June 30, 2025, Plaintiff was to complete a test drive script for Globus's THA Procedural Solution, with a 4-week deadline.

63. Plaintiff had the VP of Marketing review the draft of the Demo Script and incorporated her feedback.

64. Plaintiff completed and submitted the Demo Script to Manager Cameron by end of day on July 25, meeting the stated deadline on Plaintiff's PIP.

65. Plaintiff completed the tasks of the PIP adhering to the deadlines set by her manager.

66. On July 28, 2025, at Plaintiff's 30-day checkpoint for the PIP scheduled with Manager Cameron and Human Resources Representative Amy Garrett, they informed Plaintiff that they were ending the PIP and terminating her.

67. Plaintiff did not receive a concrete reason for the termination.

68. Defendant alleged in its EEOC Position Statement that Plaintiff "began exhibiting performance deficiencies, including botching an important presentation to a customer."

69. Manager Cameron never asked Plaintiff to perform customer-facing or surgeon-facing demos for the Eflex-TKA in light of the fact that she was not the Product Manager for that system. Seth Davis was the Product Manager for the EFlex-TKA system at the time.

70. Manager Cameron asked Plaintiff to perform *internal* demos for the Eflex-TKA system.

71. Plaintiff was the Product Manager for the EFlex-THA system, which was still very much in the development phase.

72. Since the EFlex-THA system was in the development phase, a majority of Plaintiff's core responsibilities were cerebral in nature like developing the Product positioning document, Make vs Buy analysis building and presentation, competitive analysis, creating user-facing mockups in Figma, coordinating and organizing surgeon visits, collecting feedback from surgeons to aid in development, etc. In the labs, Plaintiff was officially in charge of picture and video documentation and note-taking aside from the UI mockup generation and other coordination efforts that she would lead.

73. Plaintiff could have continued doing these activities even with her shoulder reinjury, however Manager Hayden Cameron chose to exclude her completely from the labs, surgeon meetings (with strange rules like even if she was to attend that she cannot switch on her camera or audio, she cannot reply to surgeon emails to 'avoid confusion' etc.). This occurred after Plaintiff asked for accommodations.

74. Although the job description covered broader requirements for the larger Joint Reconstruction team, the phase they were in did not have physical

tasks as the main requirement. Yet, Plaintiff's manager started giving her more physical tasks on top of her core work.

75. Plaintiff suffered a hostile work environment once she requested an accommodation as unreasonable demands were placed upon her.

76. Manager Cameron made sarcastic comments to Plaintiff about her injury and accommodations on more than one occasion.

77. Plaintiff was excluded from team activities and meetings. Plaintiff was part of the Hip Robotics team, of which she was the Product Manager. At one point, Manager Cameron invited everyone onsite from the Hip Robotics team, as well as the Knee Robotics colleagues, singling out Plaintiff.

78. Additionally, Manager Cameron provided Plaintiff with misleading and conflicting instructions which created obstacles in her work productivity.

79. Plaintiff's date of work injury, re-injury to her shoulder, was May 20, 2025, resulting in restrictions of maximum waist level lifting of 5 lbs. waist level.

80. Plaintiff avers that she was terminated in retaliation for asserting a work injury and having work-related restrictions.

81. Defendant terminated Plaintiff while she was on restrictions and failed to pay her indemnity benefits.

82. Additionally, Plaintiff believes and avers that Defendant terminated her for pretextual reasons because of her ADA protected condition and invoking her right to accommodation.

83. Plaintiff has an ADA protected disability, a right shoulder condition, as recognized and defined by the ADA/ADAAA, which required Defendant to comply with the protections afforded Plaintiff under that Act.

84. At all relevant times, Plaintiff's condition met the definition of disability under the Americans with Disabilities Act ("ADA"), which includes not only a substantial limitation of a major life activity, but a perception of a disability and a record of having a disability. The ADA has been amended by the American with Disabilities Act Amendment Act ("ADAAA"), and now has reduced definition of disability (something less than a substantial limitation) and focuses on employer conduct in refusing to accommodate disabilities.

85. Plaintiff's disability, right shoulder condition, is a disability under the ADA/ADAAA as this medical condition limits her in the major life activities of lifting, reaching and performing manual tasks as well as working.

86. Defendant had fifteen (15) or more employees so that coverage exists for Plaintiff under the Americans with Disability Act.

87. Plaintiff believes that Defendant's treatment of her was in retaliation for indicating her disability needed to be accommodated.

88. Defendant's foregoing treatment of Plaintiff was discriminatory and/or retaliatory and was because of her assertion of rights under the Pennsylvania Workers' Compensation Act or protected activity under the ADA/ADAAA and/or the Pennsylvania Human Relations Act ("PHRA").

89. Defendant retaliated against Plaintiff for protected activity by subjecting her to a hostile work environment and ultimately terminating her.

90. Defendant continued to retaliate against Plaintiff by terminating her.

91. Plaintiff's interaction with Defendant qualified as requests for accommodation under the ADA/ADAAA and the Pennsylvania Human Relations Act (PHRA) and triggered an interactive process, which did not occur.

92. There was no undue hardship on Defendant under the ADA/ADAAA and the PHRA.

93. Plaintiff was earning a salary of $93,839.99 plus a bonus of $5,000 totaling $98,839.99.

94. Defendant violated public policy by discriminating against Plaintiff and/or retaliating against her because she sustained a work injury, received workers' compensation work loss and/or medical treatment, and/or for reporting a work injury.

95. Defendant failed to reasonably accommodate Plaintiff's disability.

96. Plaintiff was discriminated against or otherwise deprived of her rights under the ADA/ADAAA and the PHRA because of the treatment complained of in this Pleading and her eventual termination.

97. Plaintiff was retaliated against for invocation of ADA/ADAAA and PHRA rights by this conduct and/or treatment.

98. Plaintiff was fired in violation of the ADA/ADAAA and the PHRA.

99. Plaintiff's termination was a result of disability discrimination and/or asking for a reasonable accommodation.

100. Defendant acted maliciously, oppressively, or in reckless disregard of Plaintiff's rights under federal law making it liable for punitive damages, or such similar state law punitive damage standard under state law making it liable for punitive damages.

101. At all relevant times, Defendant did not act in good faith and the activity of terminating Plaintiff was done in consultation with second-line supervisors or above.

102. Defendant's activity herein was not done pursuant to good-faith practices in anti-discrimination requiring Kolstad liability.

103. No similarly-situated members of other protected classes were treated in this fashion.

104. Plaintiff's counsel has incurred attorney's fees and costs which are recoverable under the ADA/ADAAA and the PHRA.

105. Plaintiff experienced humiliation, embarrassment, and emotional distress as a result of Defendant's conduct. At all relevant times, Defendant, by and through the actions and inactions of its Human Resource officials, managers, agents, and employees, has failed to act in good faith towards Plaintiff, and either (1) intentionally or recklessly ignored company non-discrimination and non-retaliation policies, or (2) was inadequately trained in recognition of reasonable accommodation requests or situations which result in the triggering of an interactive process.

106. Defendant's management and Human Resource officials aided and abetted discrimination by Defendant by the aforesaid conduct.

107. Plaintiff sustained damages as a result of Defendant's conduct, including lost compensation and benefits (including medical benefits, 401K and life insurance contributions, stock options, and other benefits) and actual monetary losses, compensatory damages, attorney's fees, costs and witness fees, and is entitled to equitable relief, including reinstatement, and an additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's ruling in Eshelman v. Agere Systems, Inc., 554 F.3d 426 (3d Cir. 2009), and is entitled to pre-judgment and post-judgment interest.

108. There is a causal link between the adverse actions and the employment actions herein.

109. Defendant did not offer Plaintiff an interactive process and/or otherwise failed to engage in a probing inquiry of the nature of Plaintiff's disability.

110. Defendant retaliated against Plaintiff by terminating her for exercising protected rights.

## COUNT I

## PLAINTIFF LAIRAI KARNIK V. GLOBUS MEDICAL, INC.

## VIOLATION OF PUBLIC POLICY FOR DISCRIMINATING AND RETALIATING AGAINST PLAINTIFF BECAUSE OF HER WORK INJURY

111. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

112. Plaintiff sustained a work injury.

113. Plaintiff reported her work injury to Defendant.

114. Defendant engaged in discriminating against Plaintiff or retaliating against her in violation of public policy because of her work injury as set forth in this Pleading, including but not limited to, terminating her employ by failing to allow her back in the workplace.

115. Plaintiff suffered damages, including loss of pay and benefits, pain, suffering and humiliation.

116. Defendant is liable for punitive damages.

WHEREFORE, Plaintiff demands the following relief in excess of $150,000: (1) wages, employment benefits (including stock options) or other compensation denied or lost by such violation, including front pay; (2) equitable relief such as rehiring (with all back and future benefits she would have been entitled to); (4) damages for pain, suffering and humiliation; (4) punitive damages; (5) medical expenses for additional treatment caused by the conduct of the employer; (6) interest; (7) an additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's ruling in Eshelman v. Agere Systems, Inc., 554 F.3d 426 (3d Cir. 2009); and (8) other costs of the action, .

**COUNT II**

**PLAINTIFF LAIRAI KARNIK V. GLOBUS MEDICAL, INC.**

**AMERICANS WITH DISABILITIES ACT**

**HOSTILE WORK ENVIRONMENT**

117. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

118. Plaintiff has ADA-protected conditions that meet the definition of a disability under the ADA/ADAAA.

119. Defendants' management subjected Plaintiff to intentional severe and pervasive conduct because of her ADA-protected conditions.

120. Plaintiff has suffered damages caused by Defendants.

121. Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff demands the following relief in excess of $150,000: (1) wages, employment benefits (including stock options) or other compensation denied or lost by such violation, including front pay wages; (2) equitable relief such as rehiring (with all back and future benefits she would have been entitled to); (3) a reasonable attorney's fee; (4) the employee's expert witness fee, if any; (5) damages for pain, suffering and humiliation; (6) medical expenses for additional treatment caused by the conduct of the employer; (7) punitive damages; (8) an additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's ruling in Eshelman v. Agere Systems, Inc., 554 F.3d 426 (3d Cir. 2009); (9) other costs of the action.

## COUNT III

## PLAINTIFF LAIRAI KARNIK V. GLOBUS MEDICAL, INC.

## AMERICANS WITH DISABILITIES ACT

## REASONABLE ACCOMMODATION INCLUDING FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

122. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

123. Plaintiff has ADA-protected conditions that meet the definition of a disability under the ADA/ADAAA.

124. Plaintiff was qualified to do the essential functions of her job, with or without reasonable accommodation.

125. Plaintiff put Defendant on notice that she had a disability and, based on such notice, Defendant was able to reasonably deduce that a request for accommodation was made.

126. Plaintiff suffered adverse employment actions because of her request for accommodation, including termination and/or a failure to engage in the interactive process and a failure to reasonably accommodate her.

127. Plaintiff engaged in the interactive process when she informed Defendant of her disability.

128. Defendant did not engage in the interactive process as a result of Plaintiff's requests for accommodation.

129. Defendant failed to accommodate Plaintiff's ADA-protected condition.

130. Defendant had no undue hardship in accommodating one or more of Plaintiff's requests for accommodation.

131. There is a causal link between the request for accommodation and the adverse actions Plaintiff experienced.

132. Plaintiff suffered damages.

133. Defendant is liable for punitive damages.

WHEREFORE, Plaintiff demands the following relief in excess of $150,000: (1) wages, employment benefits (including stock options) or other compensation denied or lost by such violation, including front pay; (2) equitable relief such as rehiring (with all back and future benefits she would have been entitled to); (3) damages for pain, suffering and humiliation (4) punitive damages; (5) a reasonable attorney's fee; (6) the employee's expert witness fee, if any; (7) medical expenses for additional treatment caused by the conduct of the employer; (8) pre-judgment and post-judgment interest; (9) an additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's ruling in Eshelman v. Agere Systems, Inc., 554 F.3d 426 (3d Cir. 2009); and (10) other costs of the action.

**COUNT IV**

**PLAINTIFF LAIRAI KARNIK V. GLOBUS MEDICAL, INC.**

**AMERICANS WITH DISABILITIES ACT**
**DISCRIMINATION**

134. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

135. Plaintiff has ADA-protected conditions that meet the definition of a disability under the ADA/ADAAA.

136. Plaintiff was qualified to do the essential functions of her job, with or without reasonable accommodation.

137. Plaintiff suffered an adverse employment action because of her ADA-protected conditions, including being treated differently in the terms, conditions, and benefits of her employment than people without a disability and/or being terminated.

138. There is a causal link between the adverse actions and the damages Plaintiff has suffered.

139. Plaintiff suffered damages, including loss of pay and benefits, pain, suffering and humiliation.

140. Defendant is liable for punitive damages.

WHEREFORE, Plaintiff demands the following relief in excess of $150,000: (1) wages, employment benefits (including stock options) or other compensation denied or lost by such violation, including front pay; (2) equitable relief such as rehiring (with all back and future benefits she would have been entitled to); (3) damages for pain, suffering and humiliation; (4) punitive damages; (5) a reasonable attorney's fee; (6) the employee's expert witness fee, if any; (7) medical expenses for additional treatment caused by the conduct of the employer; (8) pre-judgment and post-judgment interest; (9) an additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's ruling in Eshelman v. Agere Systems, Inc., 554 F.3d 426 (3d Cir. 2009); and (10) other costs of the action.

## COUNT V

## PLAINTIFF LAIRAI KARNIK V. GLOBUS MEDICAL, INC.

## AMERICANS WITH DISABILITIES ACT RETALIATION

141. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

142. Plaintiff has ADA-protected conditions that meet the definition of a disability under the ADA/ADAAA.

143. Defendant knew of Plaintiff's assertions of ADA-protected rights and took adverse actions against her, including not providing her with reasonable accommodations and not engaging in an interactive process and/or terminating her.

144. There is a causal link between Plaintiff's assertion of her ADA rights and the adverse actions herein.

145. Plaintiff suffered damages.

146. Defendant is liable for punitive damages.

WHEREFORE, Plaintiff demands the following relief in excess of $150,000: (1) wages, employment benefits (including stock options) or other compensation denied or lost by such violation, including front pay; (2) equitable relief such as rehiring (with all back and future benefits she would have been entitled to); (3) damages for pain, suffering and humiliation; (4) punitive damages; (5) a reasonable attorney's fee; (6) the employee's expert witness fee, if any; (7) medical expenses

for additional treatment caused by the conduct of the employer; (8) pre-judgment and post-judgment interest; (9) an additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's ruling in Eshelman v. Agere Systems, Inc., 554 F.3d 426 (3d Cir. 2009); and (10) other costs of the action.

## COUNT VI
## PLAINTIFF LAIRAI KARNIK V. GLOBUS MEDICAL, INC.
## PENNSYLVANIA HUMAN RELATIONS ACT
## HOSTILE WORK ENVIRONMENT

147. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

148. Plaintiff has a protected condition that meets the definition of a disability under the Pennsylvania Human Relations Act.

149. Defendants' management subjected Plaintiff to intentional severe and pervasive conduct because of her PHRA-protected conditions.

150. Plaintiff has suffered damages caused by Defendants.

151. Plaintiff is entitled to compensatory damages.

WHEREFORE, Plaintiff demands the following relief in excess of $150,000: (1) wages, employment benefits (including stock options) or other compensation denied or lost by such violation, including front pay; (2) equitable relief such as rehiring (with all back and future benefits she would have been entitled to); (3)

damages for pain, suffering and humiliation;(4) a reasonable attorney's fee; (5) the employee's expert witness fee, if any; (6) medical expenses for additional treatment caused by the conduct of the employer; (7) pre-judgment and post-judgment interest; (8) an additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's ruling in Eshelman v. Agere Systems, Inc., 554 F.3d 426 (3d Cir. 2009); and (9) other costs of the action.

**COUNT VII**

**PLAINTIFF LAIRAI KARNIK V. GLOBUS MEDICAL, INC.**

**PENNSYLVANIA HUMAN RELATIONS ACT**

**REASONABLE ACCOMMODATION INCLUDING FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS**

152. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

153. Plaintiff has a protected condition that meets the definition of a disability under the Pennsylvania Human Relations Act.

154. Plaintiff was qualified to do the essential functions of her job, with or without reasonable accommodation.

155. Plaintiff put Defendant on notice that she had a disability and, based on such notice, Defendant was able to reasonably deduce that a request for accommodation was made.

156. Plaintiff suffered adverse employment actions because of her request for accommodation, including termination and/or a failure to engage in the interactive process and a failure to reasonably accommodate her.

157. Plaintiff engaged the interactive process when she informed Defendant that she had a disability.

158. Defendant did not engage in the interactive process.

159. Defendant failed to accommodate Plaintiff's PHRA-protected condition.

160. Defendant had no undue hardship in accommodating one or more of Plaintiff's requests for accommodation.

161. There is a casual link between the request for accommodation and the adverse actions Plaintiff experienced.

162. Plaintiff suffered damages.

WHEREFORE, Plaintiff demands the following relief in excess of $150,000: (1) wages, employment benefits (including stock options) or other compensation denied or lost by such violation, including front pay; (2) equitable relief such as rehiring (with all back and future benefits she would have been entitled to); (3) damages for pain, suffering and humiliation;(4) a reasonable attorney's fee; (5) the employee's expert witness fee, if any; (6) medical expenses for additional treatment caused by the conduct of the employer; (7) pre-judgment and post-judgment interest;

(8) an additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's ruling in Eshelman v. Agere Systems, Inc., 554 F.3d 426 (3d Cir. 2009); and (9) other costs of the action.

**COUNT VIII**
**PLAINTIFF LAIRAI KARNIK V. GLOBUS MEDICAL, INC.**
**PENNSYLVANIA HUMAN RELATIONS COMMISSION**
**DISCRIMINATION**

163. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

164. Plaintiff has a protected condition that meets the definition of a disability under the Pennsylvania Human Relations Commission.

165. Plaintiff was qualified to do the essential functions of her job, with or without reasonable accommodation.

166. Plaintiff suffered an adverse employment action because of her PHRA-protected condition, including being treated differently in the terms, conditions, and benefits of her employment than people without a disability and/or being terminated.

167. There is a causal link between the adverse actions and the damages Plaintiff has suffered.

168. Plaintiff suffered damages, including loss of pay and benefits, pain, suffering and humiliation.

WHEREFORE, Plaintiff demands the following relief in excess of $150,000: (1) wages, employment benefits (including stock options) or other compensation denied or lost by such violation, including front pay; (2) equitable relief such as rehiring (with all back and future benefits she would have been entitled to); (3) damages for pain, suffering and humiliation; (4) a reasonable attorney's fee; (5) the employee's expert witness fee, if any; (6) medical expenses for additional treatment caused by the conduct of the employer; (7) pre-judgment and post-judgment interest; (8) an additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's ruling in Eshelman v. Agere Systems, Inc., 554 F.3d 426 (3d Cir. 2009); and (9) other costs of the action.

**COUNT IX**

**PLAINTIFF LAIRAI KARNIK V. GLOBUS MEDICAL, INC.**

**PENNSYLVANIA HUMAN RELATIONS ACT**

**RETALIATION**

169. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

170. Plaintiff has a protected condition that meets the definition of a disability under the Pennsylvania Human Relations Act.

171. Defendant knew of Plaintiff's assertions of PHRA-protected rights and took adverse actions against her, including not providing her with reasonable accommodations and not engaging in an interactive process and/or terminating her.

172. There is a causal link between Plaintiff's assertion of her PHRA rights and the adverse actions herein.

173. Plaintiff suffered damages.

WHEREFORE, Plaintiff demands the following relief in excess of $150,000: (1) wages, employment benefits (including stock options) or other compensation denied or lost by such violation, including front pay; (2) equitable relief such as rehiring (with all back and future benefits she would have been entitled to); (3) damages for pain, suffering and humiliation; (4) a reasonable attorney's fee; (5) the employee's expert witness fee, if any; (6) medical expenses for additional treatment caused by the conduct of the employer; (7) pre-judgment and post-judgment interest; (8) an additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's ruling in Eshelman v. Agere Systems, Inc., 554 F.3d 426 (3d Cir. 2009); and (9) other costs of the action.

Respectfully submitted,

Date: _September 23, 2026_

BY: _*/s/ Edward C. Sweeney*______

Edward C. Sweeney, Esquire
Attorney for Plaintiff
I.D. No. 64565
102 Pickering Way, Suite 403
Exton, PA 19541
(610) 594-1600
Validation of signature code: ECS1942